# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                                                       **Case No. 06-CR-70**

**VERGINIA HENDERSON**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Verginia Henderson pleaded guilty to passing counterfeit bills, contrary to 18 U.S.C. § 472. The probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing, setting defendant's offense level at 13 (base level 7, U.S.S.G. § 2B1.1(a)(2), plus 6 based on loss amount, § 2B1.1(b)(1)(D), plus 2 based on more than 10 victims, § 2B1.1(b)(2)(A), and minus 2 for acceptance of responsibility) and her criminal history category at IV, producing an imprisonment range of 24-30 months under the advisory sentencing guidelines. Neither party objected to these calculations.

Defendant requested a departure under U.S.S.G. § 4A1.3 and a non-guideline sentence of probation under 18 U.S.C. § 3553(a), while the government advocated a term at the low end of the range. I granted the departure request and imposed a prison sentence slightly below the resulting range. In this memorandum, I set forth the reasons.

## I. SENTENCING FACTORS

In imposing sentence, I consider the factors set forth in 18 U.S.C. § 3553(a). Those factors include:

    (1)    the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). My task under the statute is, after considering these factors, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

## II. DISCUSSION

### A. Nature of Offense

Defendant made and passed thousands of dollars worth of counterfeit bills. In addition to the bills she passed herself at stores and restaurants, she sold thousands of dollars of counterfeit hundreds to others in Illinois, Tennessee and Wisconsin. All total, she sold about $30,000-37,000 worth, passed about $1700 herself, and others passed about $7400. Thus, the total intended loss was between $39,100 and $46,100. About

2

thirty-four establishments were victimized.

When police executed a search warrant at her residence in December 2005, they found the printer defendant used to create the bills. Her method was not sophisticated; she took a genuine $5 bill, scrubbed off the numbers with oven cleaner, and printed $100 bills on her printer/scanner. Police found other counterfeiting paraphernalia at defendant's son's friend's house, where defendant told her son to hide it. Defendant made a statement to police indicating that she lived off the income from passing counterfeit bills.

**B.     Character of Defendant**

Defendant was thirty-six years old, with a high school equivalency degree, divorced, with one child, age sixteen. The most prominent feature of defendant's background was her serious methamphetamine habit, which wrecked her life for several years. Her first criminal conviction occurred in 2003, when she was thirty-three years old. Between 2003 and 2005, she picked up two more possession cases, a contributing to the delinquency of a minor case which also involved methamphetamine, an uttering conviction which was probably driven by the need to obtain funds for drugs, and an obstructing charge which also seemed to be drug-related.

Defendant's childhood was rough. Her mother was an addict, and defendant was moved between many foster families, suffering abuse before she was finally adopted. She had been married three times, and at the time of sentencing apparently still was because she could not serve her third husband with divorce papers unit he got out of prison. As noted, she had a sixteen year old son, who was in the primary custody of her second husband. Despite her unstable upbringing, defendant compiled a solid work record and stayed out of trouble before drug problems overcame her in her early thirties.

3

Defendant seemed to be on the right track at the time of sentencing. In 2005, she moved from California to Wisconsin to escape her drug problems and be closer to her son. For a time, she continued her counterfeiting operation in this state. However, following her arrest in December 2005, she took steps to turn her life around. She got a job as a waitress at a local Denny's, which she held for the nine months preceding sentencing. I received positive letters from her co-workers and managers, who indicated that defendant was open about her past and working hard to stay on the right path. They also indicated that she was an excellent worker. Her manager stated that defendant would be welcomed back when the present case was concluded.

Defendant was at the time of sentencing living with her ex-husband and their son, and I received a letter from defendant's son, stating that while he was close to his father it was nice having his mother around, and that she had been very supportive. Her ex-husband also wrote indicating that their son had been doing much better with her around. A friend also wrote attesting to her good qualities.

Consistent with this turn around, defendant abstained from drug use while the case was pending; her initial test on pre-trial release was positive, but all others since then negative. She was also fully cooperative with the government, identifying the person who taught her how to counterfeit and those to whom she sold bills.

**C.  Purposes of Sentencing**

There was no indication that defendant was dangerous, and if she remained drug free and continued on her present path, she was not a particular risk of recidivism. Nor was a lengthy prison term necessary to deter her from future crimes. However, I concluded the some period of confinement in prison was necessary to promote respect for

4

law and deter others. Defendant clearly had substance abuse issues, for which she had not previously received sustained treatment. I noted that she did not do well on probation in the past or deal with her substance abuse issues in the community. The victims were owed $4000 in restitution, which she could obviously better repay in the community.

**D.   Consideration of Guidelines**

The guidelines called for a term of 24-30 months. Under all the circumstances, I found that a prison sentence somewhat below the range was sufficient to satisfy the purposes of sentencing.

First, I concluded that criminal history category IV substantially over-stated the seriousness of defendant's record and the likelihood that she would re-offend. See U.S.S.G. § 4A1.3(b)(1). All of defendant's prior convictions were clustered in a two to three year period in which she was heavily using methamphetamine, see United States v. Hammond, 240 F. Supp. 2d 872, 875-76 (E.D. Wis. 2003) (stating that the court on a § 4A1.3 motion may consider whether the prior offenses were committed while the defendant was under the influence of drugs, and the closeness in time of the prior offenses, i.e., whether they were they part of one "spree"), and all of the offenses involved either possession or associated petty criminality. She had no serious felonies, no distribution cases, and no violent crimes on her record. Courts have consistently held that a departure under U.S.S.G. § 4A1.3 is proper when the criminal history category is so inflated. See, e.g., United States v. Eisinger, 321 F. Supp. 2d 997, 1007 (E.D. Wis. 2004) (citing United States v. Wilkerson, 183 F. Supp. 2d 373, 381 (D. Mass. 2002) (departing where the defendant had no convictions for crimes of violence but mostly drug and motor vehicle offenses); United States v. Wilkes, 130 F. Supp. 2d 222, 239-40 (D. Mass. 2001)

5

(departing where the defendant had only minor drug convictions); United States v. Lacy, 99 F. Supp. 2d 108, 119 (D. Mass. 2000), aff'd, 16 Fed. Appx. 10 (1st Cir. 2001) (departing where the defendant's record was "largely non-violent, and relatively minor, the kind that characterizes an out-of-control addict"); United States v. Hammond, 37 F. Supp. 2d 204, 205 (E.D.N.Y. 1999) (departing from category VI to III where the defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics"); United States v. Leviner, 31 F. Supp. 2d 23, 32-34 (D. Mass 1998) (departing where the defendant's priors were minor, mostly motor vehicle and possession charges, and non-violent)).

Further, courts have noted that if an addict is able to get her addiction under control, she is much less likely to re-offend. See id. (citing United States v. Logan, No. 02 CR 440, 2004 U.S. Dist. LEXIS 1201, at *9-11 (N.D. Ill. Feb. 2, 2004)). In the present case, defendant seemed to be on the right track, and given the fact that she stayed out of trouble for the first thirty-three years of her life, category IV over-stated her risk of re-offending, particularly if she received treatment, as I sought to ensure in this sentence. Therefore, I departed from category IV to category III.

I also believed that defendant deserved credit for her actions in turning her life around within the past year: reuniting with her son, working a steady job for people who thought very highly of her, and abstaining from drug use. This conduct, coupled with her previously demonstrated ability to live a pro-social life before her drug problem arose, showed that defendant was unlikely to re-offend and that the public need not be protected from her, particularly if she received treatment. She also had a strong support system in

6

the community now.  Finally, her cooperation with the police demonstrated further positive character development.  Cf. United States v. Rutherford, 323 F. Supp. 2d 911 (E.D. Wis. 2004) (departing based on post-offense rehabilitation, even though transformation occurred while defendant was facing charges); Eisinger, 321 F. Supp. 2d at 1000-04 (departing under U.S.S.G. § 5K2.0 where the defendant, a meth addict, kicked her habit and turned her life around).

I did not wish to over-state defendant's post-offense rehabilitation; she did involve her son in her conduct and continued counterfeiting after she moved from California to Wisconsin to try to escape her drugs problems.  Further, nine months was too short to really be sure of her turn-around.  But it did merit some consideration.

Therefore, I concluded that a sentence slightly below the range after departure was appropriate.  Defendant's proposed probationary sentence was insufficient.  As the AUSA noted at sentencing, passing counterfeit notes is a serious crime.  Busy clerks often do not notice such bills, and businesses suffer losses as a result.  Further, in cases such as this, where defendant also gave bills to others to pass, the bills permeate throughout the stream of commerce, causing additional losses.  Based on the seriousness of the crime, a prison sentence was necessary.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 15 months sufficient but not greater than necessary.  This sentence provided adequate punishment and deterrence, while recognizing and rewarding defendant for her recent good conduct.  The sentence was just 1 level below the advisory range after the § 4A1.3 departure and was supported by the specific facts of this case.  Thus, it did not create unwarranted disparity.

7

I also ordered defendant to make restitution in the amount of $4000 to the victim businesses, and serve a three year supervised release term with conditions including, <u>inter alia</u>, drug treatment and financial disclosure. Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

8